# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## J. G. Brill Company *v.* City of Philadelphia, Appellant.

*Road law—Change of grade of streets—Policy as to opening streets in the future—Municipalities.*

A municipality is under no duty to landowners to define its future policy in regard to the opening of streets over suburban lands, and to indicate with certainty the grades on which each one will be opened when the time for opening it arrives.

In an action to recover damages for an injury caused by the change of grade of a street on which plaintiff's land abuts, it is error to charge "if the uncertainty of the city's action in connection with the opening of future streets affects the value of property, then you can find that the property was worth less because the city has not defined its future policy in regard to the grade of these streets."

Resolutions and ordinances directing the opening and grading of streets, no matter how clearly or strongly they show the purpose of the city at the date of their passage, may be modified or repealed to-morrow, and property owners affected thereby may be greatly disappointed and the value of their property affected, but such loss of a prospective gain is not a cause of action. It is damnum absque injuria. But if the ordinance remains unrepealed, and is, at the proper time, carried into execution by the actual opening and grading of the street, the injured landowner has then a cause of action for the actual injury sustained. Per WILLIAMS, J.

Argued Jan. 30, 1895. Appeal, No. 37, July T., 1894, by defendant, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1891, No. 718, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Appeal from report of viewers.   Before REED, J.

At the trial it appeared that plaintiffs owned thirty-six acres of land in the suburbs of Philadelphia, having a front of four hundred feet on Bridge street. In order to avoid a grade crossing of the Philadelphia & Trenton Railroad, Bridge street was depressed at the railroad to the extent of about nine feet. The railroad itself was raised at the same time, thus affording space for Bridge street to cross under the bridge. No streets were opened through plaintiff's land. Before the depression of Bridge street the property was nearly on a level with that street.

The court charged in part as follows:

"Now it is important here to keep a distinction in mind, which is a perfectly solid distinction, but which, when we come to state it, seems rather a fine one, and that distinction is this: You have no right in this case to give damages for the opening of future streets. Sufficient for the day is the evil thereof. When those streets are opened, if they are opened, then the city will have to pay any damages accruing to the owners of the properties; but that is not inconsistent with the position taken by Mr. Ritchie in this case. He says it is not the damage that will accrue from the opening of the streets, but it is the uncertainty as to how those streets will be opened when opened. He said it was plainly possible that there were several different ways of opening those streets on that land. In other words, they could all be reduced to the level of Bridge street and every street carried under the railroad, or they could all be left on the present level, and stopping at the railroad, not crossing the railroad at all, or some could be lowered and made to pass under the railroad, and some could be left on the present grade; and he said that in his judgment, a person would buy that property, owing to the uncertain way in which those streets would be run, that a man could not be made to give as much for that property as if it had remained at the original grade. In other words, it was the uncertainty as to how those streets would be opened. Whether they would be opened on the present grade, or whether they would be opened at the present grade of Bridge street." [1]

Defendant's points were among others as follows:

"4. If the jury find that the sewer on Bridge street was laid

with a view to, or in connection with the change of grade of Bridge street, now complained of, plaintiffs cannot claim against the city for this change of grade on the basis of any advantage which they had from the use of so low a sewer. *Answer:* Refused." [2]

" 5. The jury cannot consider the matter of opening future streets through plaintiffs' property, so far, at least, as any damage which may be occasioned is concerned. If damage will be caused by such streets, or the grades at which they may be opened, those damages cannot, in whole or in part be now considered. *Answer:* I refuse that point, because I think I have given you a more accurate instruction in the course of my charge. The damages for which the city is liable from the opening of streets are matters which you cannot assess now, but if the uncertainty of the city's action in connection with the opening of future streets affects the value of the property as Mr. Ritchie thinks it does, then you can find that the property is worth less, because the city has not defined its future policy in regard to the grade of these streets." [3]

Verdict and judgment for plaintiff for $13,800. Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*E. Spencer Miller*, assistant city solicitor, *Charles F. Warwick*, city solicitor, with him, for appellant, cited, Allegheny v. Black, 99 Pa. 152.

*Francis Rawle* and *George S. Graham* for appellee, cited, Klages v. Terminal Co., 160 Pa. 386.

OPINION BY MR. JUSTICE WILLIAMS, March 18, 1895:

The plaintiff is the owner of a tract of land lying in the outskirts of the city of Philadelphia containing thirty-six acres. It is irregular in shape. Its surface has not been graded. No streets have been opened through it by the city or the owner. At one of its angles it has a front of four hundred feet on Bridge street. This street has been depressed by the action of the city in order to avoid a grade crossing of the Phila. and Trenton railroad, whose tracks adjoin the plaintiff's land. This was a proceeding to determine the damages suffered by the plaintiff

in consequence of the depression of Bridge street so as to secure an under grade crossing at this point. The plaintiff gave evidence to show the effect of the depression upon the value of his Bridge street front; and then proceeded to show by real estate dealers that the value of his tract, not fronting on this street, had been reduced at least ten thousand dollars more because of the uncertainty as to what the city might do hereafter in regard to opening streets through it. The learned judge was asked by a written point to withdraw this evidence from the jury and instruct them that "any damage to be occasioned by the opening of streets in the future could not be considered now, but could be recovered when such streets were actually opened." This instruction was refused and the evidence submitted to a jury as proper to be taken into consideration. He said "But if the uncertainty of the city's action in connection with the opening of future streets affects the value of property, as Mr. Ritchie thinks it does, then you can find that the property is worth less because the city has not defined its future policy in regard to the grade of these streets." This instruction is assigned for error. It assumes that the city is under a duty to the landowner to "define its future policy" in regard to the opening of streets over his suburban lands, and to indicate with certainty the grades on which each one will be opened when the time for opening it arrives. If no such duty exists, then the failure of the city to furnish the information required will afford no cause of complaint, and will justify no assessment of damages against it. No statute or rule of public policy has been brought to our attention that binds such a duty upon the city. We are aware of none. If for any purpose the city should undertake to render such a service to real estate owners it would not be bound to continue it, nor would it be bound by its own action in that regard. Councils cannot bind their successors, nor can they bind themselves by a declaration of "future policy."

Such a pronunciamento is not within the powers or duties of a municipal government and it would confer no rights and impose no obligations. Resolutions and ordinances directing the opening and grading of streets no matter how clearly or strongly they show the purpose of the city at the date of their passage, may be modified or repealed to-morrow, and property

owners affected thereby may be greatly disappointed and the value of their property affected, but such loss of a prospective gain is not a cause of action. It is damnum absque injuria. But if the ordinance remains unrepealed and is at the proper time carried into execution by the actual opening and grading of the street the injured landowner has then a cause of action for the actual injury sustained. The city must pay for the land it takes, and the injury it does, in the opening of streets. It is not liable for what it intends or threatens to do; much less for what a landowner may conjecture the consequences of possible action in the future. Some people speak of having suffered great losses when they really mean that they have missed the opportunity to make great gains. If they had known what was to happen, or if they could have foreseen the "future policy" of some person, corporation, or government on whose action the value of some commodity was to depend, they could have made the proper purchase or sale at the proper time to have realized a substantial advance. That is really the complaint of the plaintiff. He does not quite know when or how the city will open streets across his land. If he did he would know better how to deal with the property. But because "of the uncertainty of the action" of the city he cannot deal with it to the same advantage as he could do if the "future policy" of the street department so far as it affects his land was known to him now. The city cannot foresee the course of future developments any better than the plaintiff. It is her duty to open streets when they are needed to accommodate the public, and not till then. She must fix the grade when the time comes to open the streets, and she will then be liable for the injury actually sustained by the landowner. For the purpose of determining the amount of this injury each street stands by itself and must be separately considered. If the city at some future time shall open streets over the plaintiff's lands, and the grade adopted for one or more of them shall affect the plaintiff injuriously, he will then be entitled to recover the damages he may suffer by reason of the opening or grading of each. But until then, non constat, that any street will be opened or any injury be done. The first and third assignments of error are sustained. The second is not sufficiently definite or intelligible to enable us to understand its purpose.

The judgment is reversed and venire facias de novo awarded.